

*U.S. Department of Justice*

*United States Attorney*
*District of Maryland*
*Southern Division*

| | | | |
|---|---|---|---|
| *Elizabeth G. Wright*<br>*Assistant United States Attorney*<br>*Elizabeth.Wright2@usdoj.gov* | *Mailing Address:*<br>*6500 Cherrywood Lane, Suite 200*<br>*Greenbelt, MD 20770-1249* | *Office Location:*<br>*6406 Ivy Lane, 8th Floor*<br>*Greenbelt, MD 20770-1249* | *DIRECT: 301-344-0866*<br>*MAIN: 301-344-4433*<br>*FAX: 301-344-4516* |

March 9, 2022

The Honorable Paula Xinis
United States District Judge
District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

      Re:    United States v. Jeremiah Peter Watson,
                 Criminal No. PX-21-60

Dear Judge Xinis:

      I am writing in advance of the sentencing hearing anticipated to follow the re-arraignment in the above-referenced matter, to advise the Court of the government's support for the agreed-upon requested sentence in this case pursuant to Fed. R. Crim. P. 11(c)(1)(C), as included in the signed plea agreement slated to be entered on March 23, 2022, at 2:30 p.m. Sentencing is currently anticipated to occur directly following the re-arraignment on March 23, 2022, at 2:30 p.m.

Background

      On February 26, 2021, the morning after he fired shots at the entrance of the United States Secret Service training center in Beltsville as described below, Jeremiah Watson ("Defendant") was arrested on a criminal complaint in connection with this case. (ECF Nos. 1, 1-1.) He was soon thereafter (on March 10, 2021) indicted for Felon in Possession of a Firearm and Ammunition for the date of his arrest. (ECF No. 11.) As anticipated in the signed plea agreement, slated for filing, and in advance of the planned guilty plea hearing, the government will file a Superseding Information charging Defendant with two counts: (1) Assault on a Federal Officer with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b) (Count One); and (2) Use, Carry, and Brandish a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Two), to both of which charges Defendant has agreed to plead guilty. A seven-year mandatory minimum penalty applies to Count Two, consecutive to any other sentence imposed. Defendant has been detained since his arrest on February 26, 2021.

      As Defendant acknowledges in his signed statement of facts to be filed in this case: on February 25, 2021, at approximately 8:45 p.m., Defendant drove to the entrance of a United States

Secret Service facility located in Beltsville.  Defendant stopped his car blocking the driveway, and a federal security officer (Victim 1) approached him to ask him to move.  Defendant immediately became verbally combative and did not move his vehicle.  A second federal security officer (Victim 2) joined to assist Victim 1.

Defendant yelled at the victims with expletives, refused to move on, and approached Victim 1 aggressively and then lunged at Victim 2, putting himself within inches of Victim 2's face.  Victim 2 stepped back, asking Defendant to stop, and Defendant lunged again, this time reaching into his pocket.  Victim 2 was startled and believed Defendant was likely armed (which, they soon learned, was a well-founded fear).  Victim 1, seeing Victim 2 pull out his firearm in response, sprayed pepper spray at Defendant's face, although it only hit Defendant peripherally because Victim 1 was trying to avoid hitting Victim 2.  Defendant finally backed up, got back into his vehicle, and drove away—as another security officer (Victim 3) and the officers' supervising United States Secret Service Officer (Victim 4) approached.

After Victims 1 and 2 watched to see that Defendant's vehicle continued to depart, they joined Victims 3 and 4 to re-enter the building that was at the facility entrance.  Before they re-entered, the victims saw Defendant's vehicle returning and Victims 1, 2, and 3 saw the muzzle flash of a gunshot coming out of the driver-side window towards them.  Defendant then did a (another) U-turn and drove back along the front of the facility, firing at least 4 additional shots, this time through the passenger-side window as he was driving, and sped away.  Law enforcement later recovered three 9mm Luger shell casings on Powder Mill Road in line with the facility entrance.  The next morning (February 26, 2021), law enforcement also located a spent bullet fragment in a stone wall between the roadway and the doorway to the building, where a bullet had hit the wall.

Fortunately, the victims had managed to capture Watson's license plate number, among other observations, and law enforcement located that vehicle several hours later at the residence where Defendant was staying.  The next morning, law enforcement executed search warrants at the residence and on the vehicle.  On the sofa where Defendant slept, law enforcement recovered his cell phone which he had held during the confrontation, and a baggie containing a single round of additional 9mm Luger ammunition.  From beneath the rear seat cushion of Defendant's vehicle, law enforcement recovered a Glock-type 9mm Privately Made Firearm ("PMF") bearing no serial number, loaded with four rounds of 9mm Luger ammunition (one round chambered and three in the magazine).  From the vehicle's trunk jamb, law enforcement recovered two spent 9mm cartridge cases from the assault.

Pursuant to the plea agreement, the parties stipulate that the imposition of a term of imprisonment of **120 months in the custody of the Bureau of Prisons** is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a)—pursuant to Fed. R. Crim. P. 11(c)(1)(C).

As stipulated in the plea agreement as to Count One, the parties agree that the applicable base offense level is **14**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2A2.2(a).  A **2**-level increase applies, pursuant to U.S.S.G. § 2A2.2(b)(7), because Defendant will have been

convicted under 18 U.S.C. § 111(b).  The parties envision a **3**-level reduction for Defendant's acceptance of responsibility, for a total offense level of **13**.

Defendant has prior convictions for crimes punishable by imprisonment for terms exceeding one year that include:  (1) Conspiracy-Robbery in Howard County, Maryland (2017) (5 years' imprisonment, all but 2 years, 29 days suspended, 3 years supervised probation) (3 points), after having been also charged with Armed Robbery, Conspiracy-Armed Robbery, Robbery, Assault-First Degree, Assault-Second Degree, and Theft: Less than $1,000; and (2) Assault-Second Degree in Baltimore City (2019) (3 years' imprisonment, all but 6 months suspended, 2 years supervised probation) (2 points), after having been also charged with Assault-First Degree; and he was also previously convicted of (3) Possession of Marijuana in Spotsylvania County, Virginia (2016) (no imprisonment) (1 point).  Defendant also had a 2019 arrest for Assault-Second Degree from a domestic incident, which is on the stet docket (Anne Arundel County); and another arrest in 2019 for Driving without a License in Prince George's County, for which no trial date has yet been set.  Defendant was on supervision with Howard County at the time of this offense, yielding two criminal history points, and a resulting Criminal History Category of **IV**.

Accordingly, the Guidelines range of imprisonment for Count One in the anticipated Superseding Information is 24 to 30 months' imprisonment, consecutive to the seven years' imprisonment mandatory for Count Two.  The agreed-upon requested sentence in the case would consist of a sentence at the mandatory minimum term of imprisonment of seven years on Count Two, and a sentence of a consecutive 36 months' imprisonment on Count One.[1]

Recommendation

Considering all of the circumstances and factors in this case, the government respectfully requests the imposition of the agreed-upon requested sentence of **120 months' imprisonment** at the sentencing hearing in this case (36 months' imprisonment for Count One and 84 months' consecutive imprisonment for Count Two).  The government will further request that the Court impose a term of supervised release of <u>five years</u>, forfeiture, and no fine.  The government supports any interest by Defendant in substance abuse and mental health counseling and treatment, as well as any vocational training that may be available.  The government respectfully submits this sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing, and that a lesser sentence would not accomplish those goals.

---

[1] The Guidelines range as stipulated in the plea agreement does not include any enhancement such as pursuant to U.S.S.G. § 3A1.2 pertaining to the official victims, and Defendant receives the substantial benefit of not being charged with the otherwise-applicable Section 924(c) enhanced mandatory minimum for his discharge of the firearm, which would by itself have yielded a mandatory minimum term of imprisonment of 10 years consecutive to any other sentence imposed.  18 U.S.C. § 924(c)(1)(A)(iii).  The plea agreement also relieves Defendant of the charge under 18 U.S.C. § 922(g) from the original indictment.  If convicted of that charge, Defendant would have faced at least an initial offense level of 18 pursuant to U.S.S.G. §§ 2K2.1(a)(6) and 2K2.1(b)(6)(B).  With three points' reduction for acceptance of responsibility, the Guidelines range for that offense would be 30 to 37 months' imprisonment, consecutive to the mandatory minimum term of imprisonment for a charge under Section 924(c).

Defendant engaged in the exceptionally serious conduct of discharging his firearm at multiple federal officers engaged in their duties, on the heels of an aggressive response in what should have been a routine interaction with them and moving towards unblocking the public driveway to a federal facility. A bullet fragment was recovered from the wall in line with the door the retreating victims were attempting to access, for safety—and Defendant made two U-turns in his vehicle in order to accomplish his runs by the front of the facility. While he may have been angry and possibly under the influence of pills at the time of the shooting,[2] he had previously armed himself with a "ghost gun" and ammunition he absolutely should not have had, having prior convictions for crimes punishable by more than one year in prison and being on an active term of supervision out of Howard County. This was a traumatic event that could have had deeply tragic consequences for the victims here.

No lower sentence would be appropriate given the nature and circumstances of this offense and Defendant's criminal history, including very recent criminal history, and the very important needs to reflect the seriousness of Defendant's conduct, to protect the public, and to deter Defendant and others from the exceedingly dangerous conduct engaged in here, not to mention arming themselves with "ghost guns" and ammunition in a manner that enabled the conduct. Accordingly, a lower sentence than the parties request will not reflect the full circumstances or accomplish the important purposes of sentencing in this case.

Under the circumstances of this case, however, the government is not pursuing any higher sentence due to conversations with defense counsel and information on Defendant's substance abuse and mental health history, the fact that he has been incarcerated during the COVID-19 pandemic (although he engaged in the conduct at issue well after the pandemic began), Defendant's family situation, and other circumstances that the government anticipates Defendant will describe to the Court in further detail. Considering all of the facts and background, the agreed-upon requested 120-month sentence is the appropriate sentence in this case, and the government will respectfully request that imposition as well as supervised release and forfeiture, to best accomplish the purposes of sentencing here. The maximum term of supervised release of five years in this case is important given Defendant's prior convictions and disregard of the criminal justice sentence he was serving at the time of the offense at issue—and will best enable appropriate treatment and services for Defendant's benefit when he is released from the Bureau of Prisons.

---

[2] Such voluntary intoxication is not a defense to any of the offenses charged or to be charged in the Superseding Information. *See, e.g.*, *United States v. Wolfe*, 10 F. App'x 115, 116 (4th Cir. 2001) ("[A] § 922(g) offense is a general intent crime to which intoxication is not a defense."); *Jones v. United States*, No. 1:03-CR-47, 2018 WL 10075606, at *9 (N.D. W. Va. Apr. 6, 2018) (collecting cases reflecting that Section 924(c) is a general intent crime), *report and recommendation adopted*, No. 1:03CR47-01, 2019 WL 3752912 (N.D. W. Va. Aug. 8, 2019); *United States v. Schoolcraft*, No. 3:11-CR-287, 2012 WL 442749, at *2 (E.D. Va. Feb. 9, 2012) (same, as to 18 U.S.C. § 111). At the same time, the government does consider the mitigating factors here in informing its recommendation of the jointly-requested sentence pursuant to Fed. R. Crim. P. 11(c)(1)(C).

Statement Regarding Witnesses and Length of Hearing

The government does not intend to call any witnesses at the sentencing hearing at this time and does not anticipate the need for more than one hour for the sentencing hearing in this matter. Any victim impact statements received will be forwarded to counsel and the Court.

Very truly yours,

Erek L. Barron
United States Attorney

By:  \_\_\_\_/s/_____
Elizabeth G. Wright
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2022, I caused a copy of the foregoing to be electronically filed via the Court's CM/ECF system, which will send notification of such filing to counsel of record.

By:  \_\_\_/s/_____
Elizabeth G. Wright
Assistant United States Attorney