## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On February 25, 2021, at approximately 8:45 p.m., **JEREMIAH PETER WATSON** (**"WATSON"**) drove to the entrance of a United States Secret Service facility located in Beltsville, Maryland. The facility is located within the National Agricultural Research Center and is federal property maintained by the United States Department of Agriculture and within the jurisdiction of the United States Park Police and the special maritime and territorial jurisdiction of the United States. **WATSON** stopped his car blocking the driveway, which created a situation wherein other vehicles could not pass through. Victim 1, a security officer at the location who was acting pursuant to a federal contract to provide such services, approached **WATSON** to ask him to move his vehicle. When Victim 1 approached **WATSON**, **WATSON** immediately became verbally combative and did not move his vehicle.

Victim 1's partner, Victim 2, another security officer acting pursuant to a federal contract at that location, had approached **WATSON** just after Victim 1 did so. Victim 2 joined in asking **WATSON** to move his vehicle. Victim 2 advised **WATSON** that it was a "restricted area" and "federal property" and that if **WATSON** did not move on, "a Secret Service agent would come to arrest him." Both Victim 1 and Victim 2 wore neon yellow jackets which said "SECURITY."

With Victim 1 and Victim 2 asking him to move on, **WATSON** yelled at them with expletives, refused to move on, and said they could not do anything to him because they were "not even police." **WATSON** approached Victim 1 aggressively and then lunged at Victim 2, putting himself within inches of Victim 2's face. Victim 2 stepped back, asking **WATSON** to stop. **WATSON** then lunged again, this time reaching into his pocket. Victim 2 was startled and believed **WATSON** was likely armed. Victim 1, seeing Victim 2 pull out his firearm in response, sprayed pepper spray at **WATSON**'s face, although it only hit **WATSON** peripherally because Victim 1 was trying not to hit Victim 2. **WATSON** backed up, got back into his vehicle, and drove away.

During the incident, another federally-contracted security officer, Victim 3, approached in order to find out what was happening, and Victim 1 directed him to alert their supervising United States Secret Service Officer, Victim 4. Victim 3 and Victim 4 approached the vehicle just as **WATSON** departed, and all four victims moved away from the vehicle and back into a building. During the confrontation, Victim 1, Victim 2, and Victim 3 each noted **WATSON**'s use of a cellular telephone with a distinctive colored case. The victims also captured **WATSON**'s license plate number.

After Victim 1 and Victim 2 watched to see that **WATSON**'s vehicle continued to depart, they joined Victim 3 and Victim 4 to re-enter the building that was at the facility entrance. Before they re-entered, the victims saw **WATSON**'s vehicle coming back and Victim 1, Victim 2, and

11

Victim 3 saw the muzzle flash of a gunshot coming out of the driver-side window towards them. **WATSON** then did a U-turn and drove back along the front of the facility, firing at least 4 additional shots, this time through the passenger-side window as he was driving. **WATSON** then sped away.

Victim 1, Victim 2, Victim 3, and Victim 4 were all acting in the course of their duties as federal officers or employees, or those assisting them, at the time **WATSON** discharged his firearm at them. **WATSON** intentionally discharged his firearm towards the victims in a way that reasonably put them in fear of personal violence. **WATSON** also used, carried, and brandished the firearm during and in relation to this assault.

Officers of the United States Park Police ("USPP") responded to the scene. Law enforcement recovered three 9mm Luger shell casings on Powder Mill Road in line with the facility entrance. The next morning (February 26, 2021), law enforcement also located a spent bullet fragment in a stone wall between the roadway and the doorway to the building, where a bullet had hit the wall. Through review of information pertaining to an insurance claim with respect to the vehicle bearing the license plate number recorded, law enforcement identified that the vehicle was registered to **WATSON** and an associated address in Hanover (Anne Arundel County), Maryland. Law enforcement identified the vehicle at the address in Hanover, Maryland, that night.

On the morning of February 26, 2021, law enforcement executed search warrants at the residence and on the vehicle. In the residence, on the sofa where **WATSON** slept, law enforcement recovered **WATSON**'s cellular telephone with its distinctive colored case and a baggie containing a single round of 9mm Luger ammunition. From beneath the rear seat cushion of **WATSON**'s vehicle, law enforcement recovered a Glock-type 9mm Privately Made Firearm ("PMF") bearing no serial number, loaded with four rounds of 9mm Luger ammunition (one round chambered and three in the magazine). From the vehicle's trunk jamb, law enforcement recovered two spent 9mm cartridge cases. Forensic examination concluded that the cartridge cases recovered the previous evening, as well as the cartridge cases recovered from the trunk jamb, had been fired from the recovered firearm. The damaged spent bullet fragment had been fired from a firearm having the same barrel characteristics as the recovered firearm.

The Glock-type pistol was test-fired and found to function as a firearm pursuant to 18 U.S.C. § 921(a)(3)(A).

SO STIPULATED:

_____
Elizabeth G. Wright
Assistant United States Attorney

3/3/2022
_____
Jeremiah Peter Watson
Defendant

_____
Ned Smock, Esq.
Counsel for Defendant

13